UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIDRO BENAVIDES CARBALLO,<br><br>Petitioner,<br><br>v.<br><br>TONYA ANDREWS, Facility Administrator of Golden State Annex, ORESTES CRUZ, Director of the San Francisco Immigration and Customs Enforcement Office Field Office, KRISTI NOEM, Secretary of the United States Department of Homeland Security, and PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-00978-KES-EPG (HC)<br><br>ORDER GRANTING PRELIMINARY INJUNCTION AND DENYING MOTION TO STAY<br><br>Doc. 2 |

Petitioner Isidro Benavides Carballo has been in immigration removal proceedings since July 2020. In August 2020, petitioner was ordered released from immigration detention by the federal district judge presiding over a class action case in which petitioner was a member. Thereafter, petitioner became engaged to a U.S. citizen, further developed relationships with his family and the community, and complied with all requirements of his release. Five years later, Immigration and Customs Enforcement ("ICE") agents re-detained petitioner at a scheduled check-in.

On August 6, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2, arguing that due process entitled him to a pre-deprivation bond hearing. The Court set a briefing schedule on the motion. Doc. 4. The

1

1  government filed an opposition, Doc. 6, and petitioner filed a reply, Doc. 9.  The Court held a
2  hearing on August 13, 2025.
3        The Court raised with the parties at the hearing whether petitioner's motion should be
4  converted into a motion for preliminary injunction because the standard is the same and
5  respondents had notice and opportunity to respond through a written opposition and through oral
6  argument at the hearing.  *See* Docs. 9, 11.  Petitioner requested at the hearing that his motion be
7  converted to one for a preliminary injunction.  Following the hearing, respondents filed a
8  statement of non-opposition to that request.  Doc. 10.  Petitioner filed a response which noted
9  agreement with respondents' position on converting the motion and briefly addressed two cases.
10 Doc. 12.  The government then filed a motion to stay pending appeal of any order requiring
11 petitioner's release.  Doc. 13.  As the parties agree that the motion is ripe for conversion to a
12 motion for a preliminary injunction and do not believe that additional briefing is needed,
13 petitioner's motion is converted to a motion for preliminary injunction.
14       For the reasons set forth below, the Court grants petitioner's motion in part and enjoins
15 the government from continuing to detain petitioner for more than fourteen days without a bond
16 hearing at which the government bears the burden of justifying petitioner's detention by clear and
17 convincing evidence.  The Court also denies the government's motion to stay the injunction.
18 **I.    Background**
19       Petitioner's declarations and exhibits establish the following.  Petitioner is a 58-year-old
20 citizen of El Salvador who has resided in the United States since 1985.  Doc. 2-7 at ¶ 4; Doc. 6-1
21 at ¶ 5.  In 1985, he fled El Salvador in the midst of its civil war.  Doc. 2-7 at ¶ 4.  During the war,
22 he was captured by guerilla forces and forced by them to train, but he eventually escaped.  *Id.*  He
23 witnessed the murder of some of his relatives, including his brother, during that time.  *Id.*  When
24 petitioner arrived in the United States, he was granted temporary residency as a Temporary
25 Special Agriculture worker.  *Id.* ¶ 6.  He did not apply for and was not granted lawful permanent
26 residence, and his temporary lawful residence subsequently expired.  *Id.*
27       Petitioner has prior convictions from 1987 through 1989 for providing a false name to a
28 police officer, assault with a deadly weapon, vehicle theft, and discharging a firearm in a

negligent manner. *Id.* ¶ 7; Doc. 6-1, Ex. 5. Then, in 1990, petitioner was convicted of first-degree murder and was sentenced to twenty-five years to life in prison. Doc. 2-7 at ¶ 8; Doc. 6-1, Ex. 6. He was 21 years old at the time of the offense. Doc. 2-7 at ¶ 12. In 2015, while in prison, petitioner renounced the gang affiliation he had acquired in prison, went through a debrief process to disassociate from the gang, and was ultimately placed in protective custody in a special needs yard. Doc. 2-7 at ¶ 10. He was stabbed in prison on multiple occasions for ending his affiliation. *Id.* In 2020, the California Parole Board recommended petitioner's release from prison on parole, finding that he had changed his life and attitude while in prison and was not a risk to public safety. *Id.* ¶¶ 11–12. The Parole Board found that he had significant insight and remorse into his past actions.[1] *Id.* ¶ 12. The Parole Board's forensic clinical psychologist also found that petitioner was a low risk for re-offense. *Id.* ¶ 13.

Upon petitioner's release from prison, on July 13, 2020, ICE detained him at Mesa Verde Detention Facility in Bakersfield, California. Doc. 6-1 at ¶ 7. On July 29, 2020, the government initiated removal proceedings, charging petitioner with inadmissibility under sections 212(a)(6)(A)(i) and 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA"), as an alien present in the United States without being admitted or paroled and who had been convicted of a crime involving moral turpitude. Doc. 6-1, Ex. 1.

On August 5, 2020, the district court presiding over a class action suit in which petitioner was a member ordered that ICE release petitioner from custody. *Zepeda Rivas v. Jennings*, No. 3:20-cv-02731-VC (N.D. Cal.), Doc. 492. The class action challenged the conditions of ICE custody at Mesa Verde during the COVID-19 pandemic. *See Zepeda Rivas v. Jennings*, No. 3:20-cv-02731-VC (N.D. Cal.), Doc. 53. After granting a class-wide temporary restraining order requiring the release of low-risk detainees so that ICE could implement social distancing measures at the facility, the court considered individualized bail requests. *See Zepeda Rivas v. Jennings*, No. 3:20-cv-02731-VC (N.D. Cal.), Doc. 53. An order set out the standard the court used for considering those bail requests: "no detainee will be released [through a bail order]

---

[1] The victim's sister informed the Parole Board that the victim's family had decided to forgive petitioner. Doc. 2-7 at ¶ 14.

1  unless they have demonstrated extraordinary circumstances justifying release while the habeas
2  petition is pending, based on a consideration of the following factors: (i) the likelihood that the
3  class will ultimately prevail on its habeas petition; (ii) the risk posed to the detainee by current
4  conditions at the facilities; (iii) the likelihood that the detainee will not be a danger to the
5  community if released with conditions; and (iv) the likelihood that the detainee will appear for
6  subsequent immigration/removal proceedings as required." *Zepeda Rivas v. Jennings*, No. 3:20-
7  cv-02731-VC (N.D. Cal.), Doc. 90.  The order further explained that the court had already
8  determined that the first factor was satisfied in the order granting a class-wide temporary
9  restraining order, and that the second factor would be satisfied in every case to varying degrees
10 based on an individual's specific health conditions.  *Id.*  Petitioner's bail application detailed his
11 criminal history and other circumstances, Doc. 2-4, and the court granted his release, Doc. 2-7 at
12 ¶ 17.

13  The settlement agreement entered in *Zepeda-Rivas* provided that, for three years following
14 the effective date of the agreement, ICE could re-detain a released class member only in certain
15 circumstances, including if the individual posed a threat to public safety, posed a risk of flight,
16 violated a material condition of release, or failed to comply with a parole condition, among other
17 circumstances.  *See Zepeda Rivas v. Jennings*, No. 3:20-cv-02731-VC (N.D. Cal.), Doc. 1205-1 at
18 § III.  Respondents do not indicate that petitioner at any point met any of those criteria for re-
19 detention.  The three year period provided under the settlement agreement expired on June 9,
20 2025.  *See Zepeda Rivas v. Jennings*, No. 3:20-cv-02731-VC (N.D. Cal.), Docs. 1205-1, 1258.

21  Following his release from detention, petitioner lived in transitional housing until he was
22 successfully discharged from parole in 2021.  Doc. 2-7 at ¶ 18.  He then began living with his
23 U.S. citizen fiancée, whose chronic health problems he helps manage, developed a close
24 relationship with her adult children, and has supported his family.  *Id.* ¶¶ 19–20, 22.  Petitioner
25 incurred a serious injury in a fall, including injury to his arm and three broken disks in his back,
26 for which he requires surgery.  *Id.* ¶ 24.  He kept the immigration court updated as required with
27 his current address, and he has complied with all requirements of the Inmate Supervision
28 Appearance Program, which ICE enrolled him in in May 2025, including virtual check-ins and

home visits. *Id.* ¶¶ 29, 31. The records submitted by the parties reflect that petitioner has not been arrested or cited since his 2020 release. *Id.* ¶ 25; Doc. 6-1, Ex. 5.

On March 19, 2024, an immigration judge sustained DHS's charges of removability under sections 212(a)(6)(A)(i) and 212(a)(2)(A)(i)(I) of the INA. Doc. 6-1, Ex. 3. On May 14, petitioner filed an application for deferral of removal under the Convention Against Torture. Doc. 2-7 at ¶ 28. His individual merits hearing is scheduled for April 9, 2026. *Id.*

On July 23, 2025, an ICE officer directed petitioner to appear in-person at the Fresno ICE office on August 5, 2025. Doc. 2-7 at ¶ 32. When petitioner appeared at the ICE office as instructed, ICE officers arrested him. Doc. 2-7 at ¶ 32. He is now detained at Golden State Annex in McFarland, California. *Id.* ¶ 34.

**II.    Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). Alternatively, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

///

///

///

**III.  Discussion**

  **a. Likelihood of Success on the Merits.**

  8 U.S.C. § 1226 governs whether an individual may be detained or released during removal proceedings. Section 1226(a) sets out the general rule that the government "may release" or "may continue to detain" the individual "pending a decision on whether the alien is to be removed." 8 U.S.C. § 1226(a). Section 1226(c), however, mandates detention for individuals, like petitioner, who have committed certain criminal offenses.[2] 8 U.S.C. § 1226(c).

  In *Demore v. Kim*, the Supreme Court upheld the constitutionality of § 1226(c) on a facial challenge. *Demore v. Kim*, 538 U.S. 510, 513 (2003). In *Nielsen v. Preap*, the Court held that § 1226(c) applies even if the government does not immediately detain a criminal noncitizen upon release from a correctional facility but noted that its decision "on the meaning of that statutory provision does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute." *Nielsen v. Preap*, 586 U.S. 392, 396, 420 (2019). Petitioner brings such an as-applied challenge, arguing that his detention without a bond determination, five years after he was released by the district court in the Northern District of California based on criteria including that he was not a flight risk and did not pose a danger to the community, violates due process where respondents do not identify any material change in those circumstances and petitioner has developed significant community ties during his five-year period on release. The issue before the Court is whether petitioner has shown a likelihood of success on his argument that a bond determination is constitutionally required by due process in petitioner's specific circumstances.

  On petitioner's as-applied challenge, the analysis proceeds "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490

---

[2] Petitioner acknowledges that 8 U.S.C. § 1226(c) is the applicable statutory detention authority. Doc. 9 at 3.

U.S. 454, 460 (1989)).

### 1. Liberty Interest.

*Demore* held that "[d]etention during removal proceedings is a constitutionally permissible part of [the removal] process," 538 U.S. at 531, and the government argues that this forecloses a finding that petitioner possesses a protected liberty interest, Doc. 6 at 4–7. However, *Demore* involved a facial challenge to § 1226(c)'s detention scheme. A facial challenge requires a plaintiff to show that a statute is "unconstitutional in every conceivable application." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). In contrast, an as-applied challenge requires a plaintiff to show only that "the application of the statute to a specific factual circumstance" is unconstitutional. *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). As other courts have explained in considering *Demore*, its conclusion that § 1226(c) is constitutional in some of its applications "does not mean that the Court does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to [] detention without a bond hearing." *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022). Petitioner raises an as-applied challenge to ICE's re-detention of him five years after he was released based on the district court's determination that he was likely not a flight risk or a danger to the community. *Demore* thus does not answer the question presented in this case.

There is also a meaningful distinction between a challenge to an initial period of detention, at issue in *Demore*, and a challenge to *re-detention* after a court has previously granted release on bond pending immigration proceedings. "[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person." *Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025). In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity "to form the [] enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). In contrast, a person who has been released from physical restraint gains a "liberty [interest that] is valuable and must be seen as within the protection of the" Due Process Clause. *Id.*

In *Demore*, the Court noted that § 1226(c) was intended to prevent noncitizens with

7

certain prior criminal convictions from fleeing and from posing a danger to the community before they could be deported. *Demore*, 538 U.S. at 519–22. Here, however, petitioner was on release status for five years following an individualized determination based on criteria including that he was not likely to pose a danger or to flee if released. The present record indicates that petitioner complied with his release conditions, did not commit any new crime or violation, and appeared and checked in with authorities as required. Petitioner's as-applied challenge concerns the liberty interest that developed during the five years in which he was on release status.[3]

Even when a statute authorizes detention without a hearing, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See Morrissey*, 408 U.S. at 482 (Due Process requires hearing before revocation of parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Young v. Harper*, 520 U.S. 143, 147–49 (1997) (same, in preparole context). To determine whether a specific release gives rise to a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Here, over the last five years, petitioner met and became engaged to his U.S. citizen fiancée, whose chronic health problems he helps manage, developed a close relationship

---

[3] *Demore* also relied in part on the fact that "in the majority of [§ 1226(c)] cases, . . . removal proceedings are completed in an average time of 47 days . . . [and in the remaining cases] in which the alien appeals . . ., appeal takes an average of four months." *Demore*, 538 U.S. at 529. Here, however, petitioner's removal proceedings have been pending for over five years and are not presently scheduled to end for at least another eight months, as his individual merits hearing is set in April 2026. Doc. 2-7 at ¶ 28. *See also Demore*, 538 U.S. 510, 532–33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay . . . in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.").

with her adult children, supported his family, and complied with all terms of his release. Doc. 2-7 at ¶¶ 19–22, 25, 29–32.

The government points to the circumstances of petitioner's release in 2020—as a result of a class action regarding conditions of confinement during COVID—in arguing that a protected liberty interest was not created by petitioner's five years on release status. But although the government was precluded by the settlement agreement from re-detaining petitioner until June 2025, the government could have expedited petitioner's removal proceedings at any time during those five years. Instead, it chose to allow petitioner's proceedings to continue for five years while he reintegrated into the community and now asks for petitioner's circumstances during those five years on release to be disregarded. Petitioner was released in 2020 based on criteria including that he did not pose a flight risk or a danger to the community. The government does not argue that anything has changed in either respect, while, for five years, petitioner established ties in the community. Those circumstances are appropriately considered on petitioner's due process challenge.

In its motion to stay, the government argues that at the hearing the Court "appeared to overlook *Jennings* [*v. Rodriguez*, 583 U.S. 281 (2018),] and misconstrue due process standards." Doc. 13. The government's reliance on *Jennings* is misplaced, as *Jennings* did not concern an as-applied constitutional challenge to detention under § 1226(c). In *Jennings*, the Supreme Court interpreted the text of § 1226(c) and held that the constitutional avoidance canon could not be used to read into the statute a requirement for periodic bond hearings. *Jennings*, 583 U.S. at 304–06. The Court specifically did *not* consider any as-applied challenge based on constitutional due process grounds. *Id.* at 312 ("Because the Court of Appeals . . . had no occasion to consider respondents' constitutional arguments on their merits[,] . . . we do not reach those arguments.").

Since *Jennings*, courts have continued to routinely review as-applied constitutional challenges to § 1226(c) detention. *See, e.g.*, *Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *3–6 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *4–7 (N.D. Cal. Mar. 31, 2023); *Romero Romero v. Wolf*, No. 20-CV-08031-TSH, 2021 WL 254435, at *2 (N.D. Cal. Jan. 26, 2021); *Arizmendi v. Kelly*, No. CV-17-4791-JAT

9

(DMF), 2018 WL 3912279, at *4 (D. Ariz. July 23, 2018), *report and recommendation adopted*, No. CV-17-04791-PHX-JAT, 2018 WL 3872228 (D. Ariz. Aug. 15, 2018); *Rodriguez v. Barr*, 488 F. Supp. 3d 29, 37 (W.D.N.Y. 2020). Moreover, the Supreme Court noted in *Preap*, which post-dates *Jennings*, that its decision in *Preap* "does not foreclose as-applied challenges – that is, constitutional challenges to applications of [§ 1226(c)]." *Preap*, 586 U.S. at 420.

Notwithstanding *Preap*'s confirmation that an as-applied constitutional challenge to the application of § 1226(c) detention is not foreclosed, respondents' supplemental filing relies almost entirely on § 1226(c)'s statutory requirement for mandatory detention, arguing that § 1226(c) precludes petitioner's claim.[4] *See* Doc. 13. But it is clear from petitioner's filings and the argument at the hearing that petitioner is raising an as-applied constitutional challenge. At the hearing, the Court also questioned the parties as to the import of *Perera*, 2021 WL 2400981, and *Pham*, 2023 WL 2744397, which found constitutional due process concerns required post-detention hearings for individuals who had been at liberty for several years before being detained under § 1226(c). Respondents do not address these cases in their filing.

In both *Perera* and *Pham*, the petitioners were noncitizens who had been convicted of aggravated felonies, and their detention was statutorily mandated under § 1226(c). *See Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *1–2 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *1–2 (N.D. Cal. Mar. 31, 2023). In these cases, ICE did not detain the petitioners upon their completion of their criminal sentences. *See Perera*, 2021 WL 2400981, at *1–2; *Pham v. Becerra*, 2023 WL 2744397, at *1–2. Instead, the petitioners were released from correctional facilities and successfully reintegrated into their communities for several years before being detained pursuant to § 1226(c). *See Perera*, 2021 WL 2400981, at *1–2; *Pham*, 2023 WL 2744397, at *1–2. Both petitioners then filed habeas petitions and motions for temporary restraining orders raising as-applied due process challenges to their detention without a bond hearing, which were granted. *See Perera*, 2021 WL 2400981, at *3–6;

---

[4] Respondents make a passing reference to petitioner's as applied challenge in the final sentence of their filing, noting: "But even alternatively construed as an applied challenge, the circumstances of [petitioner's] detention are constitutional." Doc. 13 at 4.

1   *Pham*, 2023 WL 2744397, at *4–7.

2   As *Perera* and *Pham* recognized, *Demore* held that § 1226(c) is facially constitutional but
3   did not foreclose as-applied constitutional challenges to detention under § 1226(c). *Perera*, 598
4   F. Supp. 3d at 743–44; *see Pham*, 2023 WL 2744397, at *4–5. The courts in those cases found
5   that the petitioners possessed a protected liberty interest arising from their several years of post-
6   conviction freedom, and upon weighing the *Mathews* factors, found that the petitioners were
7   entitled to post-deprivation bond hearings. *See Perera*, 2021 WL 2400981, at *3–6; *Pham*, 2023
8   WL 2744397, at *4–7. Here, the present record indicates that petitioner was not only successful
9   on release status in the community and in compliance with all requirements for five years, but the
10  district court ordered his release in 2020 based on criteria including that he did not pose a flight
11  risk or present a danger to the community. In contrast, the petitioners in *Perera* and *Pham* were
12  found entitled to a post-deprivation bond hearing even though they had not previously been
13  granted release pending immigration proceedings. This case presents a stronger due process
14  concern because there has already been a court determination that petitioner did not present a
15  flight risk or danger to the community, and respondents do not present any evidence of any
16  change in these circumstances.

17  The Court finds that petitioner has a protected liberty interest. Other courts addressing
18  similar circumstances have concluded that noncitizens who lived for many years as productive
19  members of the community before being detained possessed a protected liberty interest. *See*
20  *Perera*, 598 F. Supp. 3d at 744; *Pham*, 717 F. Supp. 3d at 886; *Ortega v. Bonnar*, 415 F. Supp. 3d
21  963 (N.D. Cal. 2021) (enjoining re-arrest without a bond hearing of individual with pending
22  removal proceedings who had previously been released on bond). The Court must therefore
23  determine what process is due before the government may terminate his liberty.

### 2. Due Process Requirements.

25  Due process "is a flexible concept that varies with the particular situation." *Zinermon v.*
26  *Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation can be
27  evaluated using the *Mathews v. Eldridge* factors:

11

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[5]

Turning to the first factor, petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for five years before being re-detained, and during that time, he lived successfully in his community, become engaged to his U.S. citizen fiancée, helped manage her chronic health issues, developed a relationship with her adult children, and helped support his family.

The government argues that petitioner's interest is low because he has thus far been re-detained for only a brief time, so his detention "has not become unduly prolonged." *See* Doc. 6 at 8–9. But petitioner's challenge is based not on the present length of his re-detention, but rather, on the fact that he was previously ordered released and was then re-detained five years later with insufficient process. Petitioner has a constitutionally protected liberty interest arising from his years-long and successful period of release and integration into the community. *See Guillermo M. R.*, 2025 WL 1983677, at *4 (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"). The government has had over five years to complete his removal proceedings, and those proceedings are not currently scheduled to be complete until at least April 9, 2026—eight months from now. *See* Doc. 2-7 at ¶ 28.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the

---

[5] The government argues in its opposition that courts at times have employed other tests, but it then appears to employ the *Mathews* factors. *See* Doc. 6 at 7–8. Petitioner also uses the *Mathews* factors. *See* Doc. 2 at 29.

petitioner] has not received [and will not receive] any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. But here, in ordering petitioner released on bail, the district court necessarily determined that, despite petitioner's significant criminal history, he was not likely a flight risk or danger to the community if released. Respondents have not disputed petitioner's evidence that his conduct over the past five years further confirms that conclusion. Given these circumstances specific to petitioner, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, the government's interest in detaining petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe*, 2025 WL 691664, at *6. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. The government argues that its interest is "protecting the public from dangerous criminal aliens." Doc. 6 at 8 (quoting *Demore*, 538 U.S. at 515). This argument, however, is undermined by the district court's determination in 2020 that petitioner was likely not a danger if released, and by petitioner's subsequent performance over the past five years. The government has thus far not argued or identified any new factual circumstances in the past five years that would affect such a determination. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community. *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022) (ordering the government to provide a post-deprivation bond hearing to § 1226(c) detainee where the government bears the burden of proof); *Pham v. Becerra*, 717 F. Supp. 3d 877, 886 (N.D. Cal. 2024) (same).

At the hearing, the Court noted that the temporary restraining orders in *Perera* and *Pham* required post-deprivation bond hearings, rather than ordering the petitioners' immediate release and enjoining the government from re-detaining them without a pre-deprivation bond hearing, as petitioner requests here. *See Perera*, 2021 WL 2400981, at *7; *Pham*, 2023 WL 2744397, at *7. Petitioner argues that the Court should order his immediate release "to restore him to 'the last uncontested status which preceded the pending controversy.'" Doc. 12 at 2 (citing *Maklad v. Murray*, No. 1:25-cv-00946-JLT-SAB, 2025 WL 2299376, at *7 (E.D. Cal. Aug. 8, 2020)). However, the Court finds that a post-deprivation bond hearing as required in *Perera* and *Pham* is appropriate. Accordingly, the Court will order that respondents provide petitioner with a post-deprivation bond hearing within fourteen days of the date of this Order.

In sum, petitioner is likely to succeed on the merits of his claim that his detention without a bond hearing violates the Due Process Clause. Other district courts have reached this same conclusion in similar circumstances. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970; *Perera*, 598 F. Supp. 3d at 744; *Pham*, 717 F. Supp. 3d at 886. At a minimum, petitioner has established serious questions going to the merits. *See Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5517277, at *2–3 (N.D. Cal. Sept. 14, 2020); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1606294 (N.D. Cal. May 20, 2022).

### b. Irreparable Harm.

Turning to the second *Winters* factor, the Court notes that "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). As the Supreme Court has recognized, incarceration "has a detrimental impact on the individual" because "it often means loss of a job" and "disrupts family life." *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972). Thus, petitioner faces irreparable harm absent injunctive relief.

14

### c. The Balance of Equities and Public Interest.

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d. Respondents' Motion for a Stay Pending Appeal.

Respondents preemptively move for a stay pending appeal. Doc. 13. Under Federal Rule of Civil Procedure 62(c), the Court considers the following factors when deciding whether to stay a preliminary injunction pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "'[T]he relative hardship to the parties' is the 'critical element' in deciding [whether] a stay is justified." *Lopez v. Heckler*, 713 F.2d 1432, 1436 (9th Cir. 1983) (quoting *Benda v. Grand Lodge of International Association of Machinists, etc.*, 584 F.2d 308, 314–15 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937 (1979)). "[T]he public interest is [also] a factor to be strongly considered." *Id.* (citations omitted).

As addressed above, these factors favor petitioner, not respondents. Respondents' motion for stay largely reiterates arguments raised in their opposition to the motion for a temporary restraining order. To the extent any new argument is raised, respondents focus on the statutory

1  requirements of § 1226(c) rather than on petitioner's constitutional as-applied challenge to his
2  detention without a bond hearing based on his specific circumstances.  These arguments have
3  been addressed above.  The Court does not find that respondents are likely to succeed on the
4  merits or that they have shown irreparable injury absent a stay.  Any potential harm to the
5  government is also alleviated by the fact that this Order provides a fourteen-day period for the
6  government to hold a bond hearing before any release.  That period would also enable
7  respondents to file an appeal before any release took effect.

### IV.   Conclusion and Order

Accordingly, petitioner's motion for temporary restraining order, Doc. 2, is converted to a preliminary injunction and is GRANTED in part.  Respondents are enjoined from continuing to detain petitioner for more than fourteen days without a bond hearing before a neutral arbiter at which the government bears the burden of justifying petitioner's detention by clear and convincing evidence that he is a flight risk or danger to the community.

Respondents' motion to stay the injunction, Doc. 13, is DENIED.

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia v. Bondi*, No. 3:25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025); *Singh*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *9 (E.D. Cal. July 11, 2025).

IT IS SO ORDERED.

Dated:   August 15, 2025

UNITED STATES DISTRICT JUDGE